**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY BILEK, individually and on behalf of others similarly situated, | ) ) | Case No. 1:21-cv-01651 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAS HEALTH CENTER INC., | ) | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY d/b/a | ) | |
| CHUBB, and DOES 1-10, | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

1.      "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2343 (2020).

2.      Defendant Americas Health Center Inc. ("AHC") called Plaintiff's cellular telephone number from a spoofed phone number and played a prerecorded message; i.e., a robocall. After Plaintiff "pressed 1" to speak with a live human being, AHC tried to sell Plaintiff "Chubb" insurance for Defendant Federal Insurance Company ("FIC"), and provided a quotation for such. The call was completely unsolicited.

3.      Given the automated nature of robocall violations, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for Defendants' illegal prerecorded messages, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

4.      Plaintiff Mary Bilek brings this action seeking money damages and injunctive relief on behalf of similarly situated persons, for these unsolicited calls, against Defendants AHC

and FIC, to secure redress for Defendants' practice of causing nonconsensual telemarketing calls

to be made to the cellular telephone numbers of Plaintiff and others using an artificial or

prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227, and its state analog, the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS

305/1 *et seq*. Plaintiff seeks redress against Defendants for violations of the ATDA's prohibition

against impeding caller identification, as well.

5.      Both AHC and Federal should be held liable for these calls, even if they did not

"initiate" the calls. For example, each Defendant has been sued previously for nearly identical

violations, and each Defendant continues to accept business derived therefrom, despite that they

know such marketing leads are being developed through illegal telemarketing.

**INTRODUCTION**

6.      Advancements in telephone dialing technology by the 1980s and 90s made

reaching a large number of consumers by telephone easier and more cost-effective.  However,

this technology has also brought with it an onslaught of unsolicited robocalls, spam text

messages, and junk faxes that intrude on individual privacy and waste consumer time and

money.  As a result, the federal government and numerous states have enacted legislation to

combat these widespread telecommunications abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to
> their homes….  Banning such automated or prerecorded telephone calls to the
> home, except when the receiving party consents to receiving the call or when such
> calls are necessary in an emergency situation affecting the health and safety of the
> consumer, is the only effective means of protecting telephone consumers from
> this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

7.      As is relevant here, federal law under the TCPA prohibits "mak[ing] any call

(other than a call made for emergency purposes or made with the prior express consent of the

called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

8.      In Illinois, the ATDA also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party" or impeding caller IDs during telemarketing calls. 815 ILCS 305/15(d); 30(b). The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30.

9.      Defendants caused spoofed, prerecorded-voice calls to be made to Plaintiff's cell phone without her consent, and Plaintiff files this class action complaint on behalf of herself and others similarly situated, seeking relief from Defendants' illegal calling practices.

## PARTIES

10.      Plaintiff Mary Bilek is a natural person who resides in Cook County, Illinois. Plaintiff received the calling at issue in this case to her cell phone number while in this District. Plaintiff's cell phone number has a District-based area code, 708.

11.      Defendant Federal Insurance Company is an Indiana corporation headquartered at 251 North Illinois Street, Suite 1100, Indianapolis, Indiana 46204. FIC is a member of the Chubb family of companies,[1] and is believed to be the "Chubb" entity whose insurance was solicited to Plaintiff during the calling at issue. FIC does regular and continuous business in Illinois, including in this District. FIC also maintains a physical presence in Illinois, including at its "Chubb" branch office at 525 West Monroe Street, Suite 700, Chicago, IL 30331.

---

[1]      *See* Chubb Ltd. SEC Form 10-K, Exhibit 21.1 (https://www.sec.gov/Archives/edgar/data/896159/000089615920000003/cb-12312019xex211.htm).

12.    FIC specifically authorized AHC to market and develop business for it in Illinois, including AHC's communications with Plaintiff.[2]

13.    Defendant Americas Health Center Inc. f/k/a United Health Assurance Inc. is a Florida corporation headquartered at 141 NW 20th Street, Suite G6, Boca Raton, Florida 33431. AHC operates using fictitious names, including America's Health Providers. AHC conducted regular and continuous business in Illinois during the relevant time period, including in this District. From August 13, 2015, until it was revoked on January 8, 2021, AHC maintained a business registration with the Illinois Secretary of State, with a registered agent address of 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

14.    AHC's CEO, Drew Cohen, maintains an insurance producer license in Illinois (No. 17271515), through which AHC does business in the state. Mr. Cohen has been an FIC-appointed insurance agent since at least 2016. Mr. Cohen authorized AHC to make calls into Illinois, including the calls to Plaintiff.

15.    DOES 1-10 are yet-unidentified persons or entities involved in facilitating the lead generation or calling at issue.

### JURISDICTION AND VENUE

16.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

17.    The Court has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367, because they are based on the same calls and so related to

---

[2]    *See* Illinois Department of Insurance Profile (https://insurance.illinois.gov/applications/RegEntPortal/ViewEntityDetails.aspx?en=291400&s=Active&t=INS); Illinois NAIC Profile (https://sbs.naic.org/solar-external-lookup/lookup/company/summary/14161770?jurisdiction=IL).

Plaintiff's federal TCPA claims that they form part of the same case or controversy.

18.     The Court also has Class Action Fairness Act jurisdiction, because the nationwide class and subclass are each comprised of thousands of members, at least one class member is a citizen of a different state from where any Defendant is a citizen, and because the aggregate damages exceed $5,000,000, exclusive of fees, costs and interest.

19.     The Court has personal jurisdiction over AHC, because it placed the calls that are the subject of this lawsuit to Plaintiff with full knowledge that she resides in Illinois and has an Illinois telephone number. Moreover, AHC held itself and FIC out as being located in Illinois by spoofing the caller ID for the calls to Plaintiff with an in-District area code, 708.

20.     The Court has personal jurisdiction over FIC because it authorized its agent AHC to solicit business through the outbound telephone calls that are the subject of this lawsuit into the State of Illinois for the purpose of soliciting Plaintiff and the class for its insurance.

21.     Defendants each exploit the Illinois market in relation to the insurance-related products and services they attempted to sell to Plaintiff Bilek and the class in this case. Indeed, they have each systematically, continuously, and deliberately done and attempted to do business in this District and throughout Illinois, and generated revenue as a consequence of resulting sales to Illinois consumers—including as a direct result of the telemarketing calls at issue here. And not only that, but Defendants thereafter perform on those sales, by providing the insurance-related products and services purchased during those calls to such Illinois consumers, in Illinois. Both Defendants purposefully availed themselves of the privilege of doing business in Illinois, and purposefully directed their business activities into this state—and it is those contacts with this forum from which the claims of Plaintiff and the class in this matter arise out out of or relate to. Plaintiff's and the class' injuries here directly relate to (and, indeed, arise out of) each

- 5 -

Defendant's affirmative efforts to advertise to and serve the Illinois market, and maintenance of this action in this District therefore does not offend traditional notions of fair play and substantial justice. The Court has personal jurisdiction over Defendants.

22.     FIC authorized AHC to use its tradename and to provide quotations for its insurance products and services during such call, thus creating the reasonable – and true – impression for Plaintiff that FIC authorized the solicitation calls.

23.     FIC ratified the telemarketing that is the subject of this case by willfully and knowingly issuing a quote for its products and services to AHC, to be made during the illegal calls that are the subject of this case.

24.     Venue is appropriate in this District because Plaintiff received the calls that are the subject of this case while in this District.

## FACTS

### Bilek Facts

25.     On or about September 23, 2020, AHC called Plaintiff on her cell phone from caller ID (708) 497-8309.

26.     Because this call came from a phone number with an in-District area code (the same as Plaintiff's), Plaintiff believed the caller was someone from the Chicago suburbs; perhaps a neighbor or care-giver.

27.     In fact, AHC made the call to solicit Plaintiff to purchase FIC insurance.

28.     AHC spoofed the phone number to make it appear like it had been made locally to Plaintiff (and the other class members in this District), so that the call recipient would be more likely to answer.

29.     Plaintiff fell for this deception, and answered the call.

30.     The call played a prerecorded message that solicited health insurance and instructed Plaintiff to "press 1" to be connected with a representative.

31.     The prerecorded message identified neither Federal nor AHC.

32.     Plaintiff "pressed 1" as instructed by the prerecorded prompt, and was connected to an individual identified as an agent with America's Health Providers, a fictitious name for AHC.[3]

33.     After asking several questions, the AHC agent provided Plaintiff with a quote for health insurance, including based on Plaintiff's ZIP code in this District.

34.     Specifically, the AHC agent quoted Plaintiff for a $359.85/month MultiPlan PPO insurance plan underwritten by "Chubb" (i.e., FIC), with $0.00 deductible, that included 65% vision coverage, 70% dental coverage, and $3.00 to $5.00 co-pays for prescription drugs. The agent informed Plaintiff that the plan did not include any child birth, mental health, or drug/alcohol coverage.

35.     The AHC agent also informed Plaintiff that the plan required payment of a one-time, $99.95 fee, which Plaintiff understood would compensate AHC for having generated her as a sale, but could also have been a fee paid to some third party that was not mentioned during the call.

36.     FIC authorized AHC to use its tradename "Chubb" for this call and insurance quote.

37.     Based upon the fact that AHC and "Chubb" (i.e., FIC) were identified during the call and quote, Plaintiff reasonably believed that the call was made by AHC to solicit for FIC, with both Defendants' authorization, and relied upon such.

38.     On information and belief, Plaintiff received additional prerecorded calls from

---

[3]     *See* http://dos.sunbiz.org/pdf/50334705.pdf.

AHC, too, which did not identify either Defendant in the prerecorded portion of the call, did not provide a legitimate phone number or address for them, and which were made using a spoofed caller ID. These phone calls are difficult to identify given spoofed caller ID and noncompliance.

### Additional Facts and Allegations

39.     Calls to Plaintiff and the class "spoofed" the caller ID to make it appear that the calls originated locally or from someone other than Defendants, thus increasing the likelihood that recipients would answer and listen to the sales pitch.

40.     Spoofing also has the purpose and effect of lowering the probability that Defendants will get caught in making illegal telemarketing calls.

41.     This, coupled with the fact that the prerecorded message did not identify the caller or seller, or provide a phone number or address, permits Defendants to make a shocking number of telemarketing calls with relative impunity.

42.     Thus – by design, in order to attempt to evade TCPA and state-law liability – only consumers who indicate an interest when presented with the prerecorded message are told who made the calls, and what is being sold.

43.     AHC is directly liable for violations of the TCPA and ATDA in relation to the calls to Plaintiff and the class and subclass, because it physically placed and actively participated in them.

44.     FIC appointed AHC as its agent for purposes of soliciting potential business on its behalf, including for the telemarketing at issue.

45.     FIC appointed AHC as its agent for purposes of receiving applications for insurance, including specifically as to Illinois consumers like Plaintiff.

46.     FIC insisted upon controlling – and maintaining the ability to control – the day-to-

day operations of AHC. For example:

    a.   FIC maintained the unilateral right to give instructions to AHC about telemarketing or any other aspect of their relationship at any time;

    b.   FIC maintained the right to terminate its agreement with AHC at any time for any reason,

    c.   FIC maintained the right to reject any particular potential or existing customer that AHC (or any other similar vendor) provided for any reason at all,

    d.   FIC dictated the geographical regions AHC called, and specifically authorized AHC to solicit Illinois consumers - like Plaintiff - to sell its goods and services;

    e.   FIC enjoyed and maintained the right to control and approve the manner in which AHC sales were generated or solicited, including the manner and content of any advertising;

    f.   FIC maintained the unilateral right to reduce or suspend AHC's authority to solicit business and telemarket for any reason upon written notice;

    g.   FIC enjoyed the right to audit AHC's financial and account records upon unilateral demand.

47.    Plaintiff and other class members reasonably believed FIC authorized the calls at issue, based on FIC's own actions—including through it permitting AHC to use its tradename during such marketing, compensating AHC for business derived from such calls, permitting AHC access to detailed, proprietary pricing and product information used in such calls (and which AHC used to provide the quote to Plaintiff), authorizing AHC to issue quotes and bind FIC through sales derived through such calls, and retaining revenue and providing the goods and services purchased as a result of such.

48.     FIC knew that AHC was telemarketing on its behalf using an artificial or prerecorded voice irrespective of the called party's consent, and did nothing to prevent or stop the calling at issue. Instead of repudiating the calls and business derived therefrom, FIC knowingly continued to enjoy the benefits of the marketing, such as the advertising benefit and acceptance of revenue from new customers derived therefrom.

49.     Both Defendants have been sued in the past for analogous telemarketing violations, and their executives and legal teams were on actual notice that their practices were resulting in nonconsensual robocalls to consumers' cell phones like those alleged here. *See, e.g., Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* No. 0:19-cv-60597 (S.D. Fla. filed Mar. 6, 2019) (class action against FIC based on TCPA robocall violations); *Fitzhenry v. GoHealth, LLC*, No. 1:19-cv-06318 (N.D. Ill. filed Sept. 23, 2019) (cross-claim against AHC in case based on TCPA robocall violations). Nonetheless, both FIC and AHC have continued to reap the benefits of these illegal calls, choosing profits over consumer privacy.

50.     FIC's actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

51.     FIC knowingly accepted business that originated through the nonconsensual telemarketing at issue, including compensating AHC for doing so, and thereafter provided the products and services purchased through the calling and retained revenue from such, thus ratifying it.

52.     Alternatively, to the extent that FIC lacked full knowledge about every aspect of the telemarketing by AHC on its behalf, it failed to investigate further despite knowledge that would have caused a reasonable person to do so.

53.     FIC received numerous complaints about nonconsensual telemarketing by AHC

and similar vendors (and has even been sued in the past by other clients of Plaintiff's counsel), but nonetheless failed to investigate or correct its deficient policies, practices, and procedures that resulted in the illegal calling at issue. Indeed, FIC knows that it will continue to benefit from violations of the TCPA and other telemarketing laws like the ATDA, but treats it like a cost of doing business instead of ensuring actual compliance.

54.     Defendants' violations were negligent. Alternatively, they were willful and knowing.

55.     Plaintiff and the class have been damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the class. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of a class and subclass consisting of:

> All persons in the United States whose cellular telephone number AHC, or some third party on its behalf, called using an artificial or prerecorded voice, where prior to such call there existed no signed, written agreement with the recipient that included a disclosure informing the person signing that: (A) By executing the agreement, such person authorizes AHC or FIC to deliver or cause to be delivered to the signatory telemarketing calls using an artificial or prerecorded voice; and (B) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> Plaintiff alleges a subclass of Illinois consumers who received the challenged calls.

57.     Upon information and belief, there were more than 1,000 persons who received

calls as identified in each of the foregoing class and subclass definitions in 2020, alone.

58.    Common questions of law or fact exist as to all members of the class and subclass, which predominate over any questions solely affecting any individual member, including Plaintiff.  Such questions common include but are not limited to:

   a.  Whether the calls to Plaintiff and the subclass were made using an "autodialer" as such term is defined or understood under the ATDA;

   b.  Whether the calls to Plaintiff and the class were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders

   c.  Whether Defendants had valid consent for calls to the cell phone numbers of Plaintiff and the other members of the class and subclass; and

   d.  Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. § 227(b)(3).

59.    Plaintiff's claims are typical of the claims of the other members of the class and subclass.  The factual and legal bases of Defendants' liability to Plaintiff and the other class members are the same: Defendants violated the TCPA by causing spoofed, artificial- or prerecorded-voice telemarketing calls to be made to the cellular telephone number of each member of the class and subclass, without permission.

60.    Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has no interests that might conflict with the interests of the class and subclass.  Plaintiff is interested in pursuing her claims vigorously, and she has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

61.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail.  There are, on information and belief, thousands of class and subclass members, such that joinder of all members is impracticable.

62.     No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

63.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class and subclass, thereby making relief appropriate with respect to the class and subclass as a whole.  Prosecution of separate actions by individual members of the class and subclass, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class and subclass that would establish incompatible standards of conduct.

64.     The identity of the class and subclass are, on information and belief, readily identifiable from Defendants' or their vendors' records.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227

65.     Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this count on behalf of herself and the class.

66.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone

service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

67.     Defendants initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the class defined above using an artificial or prerecorded voice. These calls were made without regard to whether or not Defendants had previously obtained express consent from the called party to make such calls.  In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the class when the calls were made.

68.     These calls and violations were willful or knowing.

69.     Defendants violated the TCPA by causing non-emergency calls to be made to the cell phone numbers of Plaintiff and the class using an artificial or prerecorded voice, without prior express consent.

70.     To the extent that some of the calls to Plaintiff and the class were made by vendors of Defendants, Defendants are liable for those calls, too.

71.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to a minimum of $500 in damages for each violation; treble damages if violations are found to have been willful or knowing.  Plaintiff and the class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

72.     Because Defendants knew or should have known that Plaintiff and the other members of the class had not given prior express consent to receive such artificial- or prerecorded-voice calls to their cell phone numbers—and/or willfully caused such calls to be made to the cell phone numbers of Plaintiff and the other members of the class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff

and the other members of the class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the class as alleged herein;

B. A declaration that Defendants violated the TCPA as to Plaintiff and the class;

C. Damages, pursuant to 47 U.S.C. § 227(b)(3);

D. Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the prevention of Defendants from violating the TCPA in the future, including:

1. Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' and their vendors' outbound calls – including calls originating from lead generators – to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis for no less than five years.

2. Requiring Defendants to include a working, automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls;

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

## COUNT II
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*

73. Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this count on behalf of herself and the subclass.

74. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

75. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any

telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).

76.     A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

77.     Defendants violated the ATDA by causing prerecorded messages placed by an autodialer to be played during calls to the phones of Plaintiff and the other subclass members, without such persons' consent. No human being physically dialed each digit of Plaintiff's and the other subclass members' telephone numbers to call their phones; rather, the calls were made using a dialing system that dialed randomly or sequentially from a database of stored numbers, automatically and without human intervention, including as evidenced by the automated nature of the calls.

78.     Defendants' prerecorded messages to the phones of Plaintiff and the other subclass members included language soliciting the sale of goods or services without live voice interaction, including offering insurance.

79.     As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the subclass, respectfully requests that the Court enter judgment against Defendants for:

        A.     Certification of the subclass as alleged herein;

        B.     Damages, pursuant to 815 ILCS 305/30;

C.      Attorneys' fees and costs, as permitted by law; and

D.      Such other or further relief as the Court deems just and proper.

## COUNT III
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*

80.      Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this count on behalf of herself and the subclass.

81.      The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

82.      Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

83.      Defendants' telemarketing calls above were made with the caller ID set to deceive consumers into answering calls they would not otherwise answer.

84.      While the service or equipment used to make such calls was capable of allowing the display of a legitimate telephone number, the calls were made instead using disparate caller IDs, designed to trick consumers into answering calls.

85.      For example, AHC called Plaintiff using a spoofed phone number with a "708" area code, which deceived Plaintiff into believing it was made locally from the Chicago suburbs. This caused Plaintiff to answer the phone when she might otherwise have ignored the call.

86.      As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the subclass, respectfully requests that the Court enter judgment against Defendants for:

A.      Certification of the subclass as alleged herein;

B.      Damages, pursuant to 815 ILCS 305/30;

C.      Attorneys' fees and costs, as permitted by law; and

D.      Such other or further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: April 7, 2021

MARY BILEK, individually and
on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

- 18 -

## **Document Preservation Demand**

Plaintiff demands that Defendants preserve all records, and direct that all (sub)vendors, agents and other third parties with relevant documents or data do so, too. Each Defendant should obtain all call data, lead data, and other relevant documents from all applicable (sub)vendors or third parties – particularly if they are located overseas – ***before*** terminating or otherwise taking any steps that might alter its relationship with them. Our experience is that lead generators and other vendors often remove customer access to call records upon termination. Defendants should gather these records first, before taking any steps that might remove access to these types of records. Plaintiff will assist with reasonable costs of preservation; please contact the attorneys listed here to discuss.